STEIN, Respondent, vs. C. A. GOODYEAR LUMBER COMPANY,
Appellant.

*December 13, 1912—January 7, 1913.*

*Master and servant: Injury from defective machinery: Promise to re-
pair: Contributory negligence: Questions for jury.*

1. Plaintiff, an employee in defendant's sawmill, was injured by the
   sudden and unexpected starting of the slasher chains while he
   was upon the slasher table removing a board which had lodged
   there. Upon the evidence,—tending to show, among other things,
   that plaintiff had made several requests that the mechanism of
   the chains be repaired so that they would not start of them-
   selves; that at the time of the last request, about two days be-
   fore the accident, the foreman said he would attend to it at
   once and immediately went downstairs where the friction
   clutch was; that thereafter until the accident the chains did
   not start improperly; that it would have taken three weeks to
   make a complete and permanent repair, but plaintiff did not
   know that fact; and that he believed the defect had been fixed,—
   it is *held* that it was a question for the jury whether plaintiff
   was guilty of contributory negligence in acting upon the as-
   sumption that the chains had been repaired so that they would
   not start of themselves.
2. The conclusion of want of ordinary care should be very clear to
   justify the court in taking the question from the jury.

APPEAL from a judgment of the circuit court for Monroe
county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

This is a personal injury action to recover damages for a
serious injury to the plaintiff's foot sustained while operating
the slasher saws in the defendant's sawmill. The plaintiff
was about twenty-two years of age at the time of the accident,
October 8, 1910, and had been engaged in work in and about
sawmills for about five years, and had worked for the de-
fendant since the previous March.

The slasher saws and surroundings are fairly described by
counsel for appellant as follows:

"Three conveyors or roller lines run lengthwise of the mill,
east and west. Under these pass a series of chains, called

floor chains, which run across the floor from twenty-six to thirty feet, and are fitted with dogs for dragging slabs, bark, and edgings. They run to the lower edge of an inclined table, called the slasher table, which is on the north side of the mill. This table is twenty-four feet long, ten feet wide, and three feet high at the back end. It joins the floor at the point where the most northerly roller line stands, and at the same point the floor chains pass down through the floor and over sprocket wheels fastened to a shaft. On the same shaft are other sprocket wheels, which operate the slasher chains which run up the slasher table and take the slabs and waste from the floor. These slasher chains are arranged in series of three, seventeen, seven, and six inches apart. On the shaft which runs these chains is a face wheel of metal. This is run by a friction wheel, which is belted to a motor. These two wheels are controlled by an eccentric, which, at the time of the accident, had three fourths of an inch throw and which was moved by a lever at the east end of the slasher table.

"Five feet two inches from the roller line the edges of the four slasher saws entered the table. These were four feet in diameter, four feet one inch apart, and revolved 850 revolutions per minute, giving their edges a speed of about three miles a minute. The saws were run by a motor which was controlled by a switch on a post about four feet from the east end of the slasher table. The slasher chains moved about one foot a second and carried the slabs and waste against the slasher saws. The face and friction wheels which operated them had to be adjusted so as to drag the heavy loads of slabs which came off the roller lines. The throw of the eccentric was insufficient to free them entirely when so adjusted. When the loads were heavy the face wheel would heat, and then when the lever was thrown to the south the wheels would still engage and the chains would move or run if they happened to be empty."

This starting of the chains would happen at irregular intervals and on the average about once a week. Plaintiff's regular work was to stand south of the north roller line and pull slabs off the line on to the floor chains. He had a pole four or five feet long with a pike on the end by which he could handle pieces of plank, but not cants. Sometimes when

the chains got clogged on the slasher table or when cants fell off the roller line he would go upon the slasher table to clear the chains or remove the cant.   Sometime before the injury to plaintiff he had complained to the shop foreman about the involuntary starting of the chains.   About October 1st the movement became more frequent and he complained again, and the foreman said he would fix it, but did not.   Finally on Thursday noon prior to the accident he again complained to the foreman, who said he would tend to it, and immediately went downstairs where the friction clutch was.   Nothing further was said.   The plaintiff worked on the slasher Thursday afternoon, all of Friday, and Saturday morning, during which time he had occasion to stop the chains three times and perhaps more and they worked all right.   On Saturday afternoon he was sent to the wood saw until 4 o'clock, when he was sent to the south end of the slasher table again to take damaged stuff from a conveyor which came in at the north side of the mill and throw the worthless pieces on the slasher chains, and the other stuff over the dead roller line to a man who passed it to the edger.   At this time the mill was shut down, the roller lines shut off, and only the slasher chains and saws and the wood saw running.   The plaintiff started the chains, stuff began to come up the conveyor, and he threw some on the chains.   A piece of hardwood board, about a foot and a half long, stopped on the table about a foot and a half below the saws, five feet from the roller line, and six or seven feet from the east end of the slasher table, where the plaintiff stood.   The plaintiff deemed it his duty to remove this board, so he stopped the chains and walked out on the slanting slasher table, stepping on the chains because the table was so slippery and oily that he could not keep his footing.   He reached the board, picked it up, and threw it from the table, and just as he was straightening up the chains started and he jumped to save himself, and his foot was caught by one of the floor chains and drawn into a hole in the floor and badly injured.

A motion by defendant for a directed verdict was overruled and the cause submitted to a jury, which returned the following special verdict:

"(1) Was the friction device provided by the defendant for starting and stopping the slasher chains in the slasher table unsafe and insufficient for the use of the plaintiff on the 8th day of October, 1910, in the performance of his work at the slasher table?  A. Yes.

"(2) If you answer the first question 'Yes,' then answer this: Had the plaintiff prior to said date notified the defendant of its condition and protested against further use thereof?  A. Yes.

"(3) If you answer the second question 'Yes,' then did Oakes, the foreman of the defendant, promise to repair the same?  A. Yes.

"(4) If you answer the third question 'Yes,' then did the plaintiff continue the use of said device up to the time of the accident relying upon such promise?  A. Yes.

"(5) If you answer the third question 'Yes,' then did the plaintiff thereafter continue the use of said device knowing, or when in the exercise of ordinary care he should have known, that the same had not been repaired?  A. No.

"(6) If you answer the third question 'Yes,' then under all the circumstances did the plaintiff continue the use of the machine in question for a longer time than was reasonable to allow the defendant to repair the same?  A. No.

"(7) If you answer the third question 'Yes,' then did the plaintiff thereafter continue the use of said device in the belief that the same had been repaired?  A. Yes.

"(8) If you answer the first question 'Yes,' then was the unsafe and insufficient condition of said friction device the proximate cause of the injury to the plaintiff?  A. Yes.

"(9) Did the plaintiff fail to exercise any ordinary care which contributed to his injury?  A. No.

"(10) If the court shall finally determine that the plaintiff is entitled to recover, at what sum do you assess his damages?  A. $3,500."

. From judgment for the plaintiff on this verdict the defendant appeals.

For the appellant there was a brief by *Quarles, Spence &*

*Quarles,* attorneys, and *Irving A. Fish,* of counsel, and oral argument by *Mr. Fish.*

For the respondent there was a brief by *T. P. Abel & Geo. W. Bunge,* and oral argument by *Mr. Bunge.*

WINSLOW, C. J. The appellant makes but one contention, namely, that the plaintiff was conclusively shown to be guilty of contributory negligence. The argument is that there was a safe way of removing the board from the slasher table without stepping upon the table or the chains, namely, by stepping on the roller table and using the pike pole, and that no man of ordinary care and prudence would act upon the assumption that the chains had been repaired so that they would not start of themselves.

Really the latter proposition is the controlling proposition in the case, because, if the jury were entitled to conclude that a man of ordinary care and prudence would assume that the defect had been repaired, then there would be no negligence in stepping on the chains, inasmuch as the only serious danger resulting from that act was the danger of their starting without warning. After careful consideration of the evidence we are unable to say that the question should have been taken from the jury. It is true that several previous requests to repair the mechanism of the chains had been made and that no permanent repair had taken place, and it is also true that it now appears that it would have taken three weeks to make a complete and permanent repair by procuring and putting in place a new eccentric which when thrown would separate the face and friction wheels operating the slasher chains so that they could not engage when the face wheel was heated. This latter fact, however, was not known to the plaintiff. So far as he knew, the mechanism of the chains could be easily repaired so as to remedy the difficulty. His testimony is that on Thursday, when he last asked the foreman to make repairs, the foreman said he would go down and

tend to it right away and that the foreman immediately went downstairs; that from that time up to the time of the injury on Saturday afternoon the chains never started of themselves, and that he believed that the defect had been fixed. It may be admitted that the question is a close one, but for that very reason we think it is properly a question for the jury. The conclusion of lack of ordinary care should be very clear in order to justify the court in taking it from the jury.

*By the Court.*—Judgment affirmed.